**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

HYUNDAI STEEL COMPANY,

      Plaintiff,

    v.

UNITED STATES,

      Defendant.

Court No. 26-02220

## **COMPLAINT**

1.     Plaintiff Hyundai Steel Company ("Plaintiff" or "Hyundai Steel") by and through its counsel hereby alleges and states as follows:

## **JURISDICTION**

2.     Plaintiff brings this action pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii) to contest certain aspects of the final results of the administrative review of the countervailing duty ("CVD") order on certain cut-to-length carbon-quality steel plate ("CTL plate") from the Republic of Korea, Case No. C-580-837, issued by the International Trade Administration of the United States Department of Commerce ("Commerce"). *Certain Cut-to-Length Carbon-Quality Steel Plate From the Republic of Korea: Final Results of Countervailing Duty Administrative Review; 2023*, 91 Fed. Reg. 8,180 (Dep't Commerce Feb. 20, 2026) ("*Final Results*") and accompanying Issues and Decision Memorandum ("Final Decision Mem."). The challenged review covered entries in calendar year 2023.

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) because this action is commenced pursuant to 19 U.S.C. § 1516a.

**PARTIES AND STANDING**

4.      Plaintiff is a manufacturer and exporter to the United States of CTL plate from Korea, and therefore is an interested party within the meaning of sections 771(9)(A) and 516A(f)(3) of the Tariff Act of 1930 ("the Act").  19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3). Plaintiff was also a party to the administrative proceeding that led to the determination that is being challenged herein, as Plaintiff was selected by Commerce as a mandatory respondent, responded to all of Commerce's questionnaires, and submitted a case brief to Commerce. Accordingly, Plaintiff has standing pursuant to 28 U.S.C. § 2631(c) to commence this action.

**TIMELINESS OF THE ACTION**

5.      On February 20, 2026, Commerce published in the *Federal Register* the *Final Results* of the 2023 administrative review of the CTL plate CVD order.  91 Fed. Reg. at 8,180. Plaintiff timely filed a Summons on March 17, 2026, and this Complaint is filed within thirty days of the filing of the Summons, pursuant to 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of the Rules of this Court.

**STATEMENT OF FACTS**

6.      On April 9, 2024, Commerce initiated an administrative review of the CVD order on CTL plate for the 2023 period of review ("POR").  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 24,780 (Dep't Commerce Apr. 9, 2024).  On June 12, 2024, Commerce selected Hyundai Steel as a mandatory respondent in this administrative review and issued an Initial Questionnaire.  *See* Memorandum from Elizabeth Russ, Import Policy Analyst, Office III, AD/CVD Operations, "Countervailing Duty Administrative Review of the Countervailing Duty Order on Certain Cut-to-Length Carbon-Quality Steel from the Republic of Korea; 2023:  Respondent Selection" (June 12, 2024); Letter

from Peter Zukowski, Program Manager, Office III, AD/CVD Operations, "Administrative Review of Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Countervailing Duty Questionnaire" (June 12, 2024) ("Initial Questionnaire").  On August 14, 2024, Hyundai Steel filed its Initial Questionnaire Response.  *See* Letter from Morris, Manning & Martin, LLP, "Certain Cut-to-Lenth Carbon-Quality Steel Plate from the Republic of Korea, Case No. C-580-837:  Hyundai Steel's Initial Questionnaire Response" (Aug. 14, 2024) ("Hyundai Steel's IQR").  The Government of Korea ("GOK") filed its response to the Initial Questionnaire on August 14, 2024.  *See* Letter from Yoon & Yang LLC to Sec'y Commerce, "Administrative Review of Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Response to the Initial Questionnaire" (Aug. 14, 2024) ("GOK IQR").

7.    One of the programs being reviewed by Commerce was the alleged provision of electricity for less than adequate remuneration ("LTAR").  *See* Initial Questionnaire at 6-12.  Although Commerce's analysis is complex and focuses upon whether the Korea Electric Power Corporation's ("KEPCO") electricity prices are "consistent with market principles," the primary focus of the analysis is whether KEPCO fully recovers its cost and profit.  *See, e.g.,* Final Dec. Mem. at 8-15.  Commerce thus required the GOK to submit KEPCO's cost data as part of its questionnaire response.  In response to a supplemental questionnaire, the GOK provided the KEPCO data for calendar year 2023.  *See* Letter from Yoon & Yang LLC to Sec'y Commerce, "Administrative Review of Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Response to the Supplemental Questionnaire" at Exhibit E-23 and Exhibit E-23.1 (Feb. 18, 2025) ("GOK First SQR").

8.    In its initial questionnaire and a supplemental questionnaire responses, the GOK provided confidential electricity usage data during 2023 for the steel industry and the ten largest

3

electricity consuming industries. Letter from Yoon and Yang LLC to Sec'y Commerce, "Response to the Supplemental Questionnaire," at 2-4 (May 12, 2025) ("GOK Third SQR"). This data was requested by Commerce for purposes of its *de facto* specificity analysis.  The data that the GOK provided in its initial questionnaire response was based on the Korea Standard Industrial Classification ("KSIC"), Korea's official industry classification system.  GOK Third SQR at 2-3.  In its supplemental response, the GOK provided electricity consumption data from KEPCO.  GOK Third SQR at 3-5; *see also* Letter from Yoon & Yang LLC to Sec'y Commerce, "Response to Supplemental Questionnaire" at Exhibit E-24 (Apr. 28, 2025) ("GOK Second SQR").

9.      In its initial questionnaire response, the GOK also explained that KEPCO introduced a Fuel Cost Adjusted Charge ("FCAC") and the cost pass-through tariff system in January 2021 to better account for fluctuations in fuel prices.  *See* GOK IQR at 20, Exhibit E-2 at 5-6.  The FCAC reflects changes in fuel costs every quarter in the price that KEPCO charges to its customers.  If KEPCO is unable to charge the entire fluctuation in fuel prices to its customers in a given quarter due to certain built-in limits on the amount prices can be increased each quarter, the cost pass-through system allows KEPCO to "accumulate such portions and reflect them in what is called the total comprehensive cost."  *Id*.  The total comprehensive cost is then used to calculate the cost recovery rate going forward and to establish the Base Charge and Usage Charge of KEPCO's electricity tariff in order to permit recovery of these increased fuel costs in later quarters.  *Id.*

10.      The GOK also explained that KEPCO accumulated portions of the fuel costs that were not charged to its customers through the FCAC in 2021 or 2022 and included these costs as an item in its total operating cost during the 2023 POR.  The total operating cost (including the

4

accumulated fuel costs carried forward from 2021 and 2022) was then allocated to the costs of each class of electricity to form the basis for calculating the cost recovery rate of each class. These accumulated costs were included in KEPCO's 2023 cost data to ensure the long-term recovery of fuel costs that had not been fully passed on to its customers in prior years. These unrecovered fuel costs, however, were already included in KEPCO's 2021 and 2022 costs. *See* GOK First SQR at 4.

11. On June 12, 2025, Commerce issued its *Preliminary Results*. *See Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2023,* 90 Fed. Reg. 24,776 (June. 12, 2025) ("*Preliminary Results*"), and accompanying Preliminary Decision Memorandum ("Preliminary Decision Mem."). In the *Preliminary Results*, Commerce determined that the provision of electricity provided a financial contribution and benefit. Preliminary Decision Mem. at 27-35. Commerce also preliminarily determined that the provision of electricity was *de facto* specific pursuant to Section 771(5A)(D)(iii) because the steel industry allegedly "received a disproportionately large amount of the subsidy." *Id.* at 35 (citing 19 U.S.C. § 1677(5A)(D)(iii)(III)). Commerce conducted its specificity analysis using both sets of consumption data from the GOK. Memorandum from Kristen Johnson, International Trade Compliance Analyst, AD/CVD Operations, Office III, "Administrative Review of the Countervailing Duty Order on Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea (Korea); 2023: Specificity Analysis of Industrial Electricity Consumption" at 2 (June 5, 2025).

12. The parties submitted case briefs on August 19, 2025, including the GOK and Hyundai Steel. *See* Letter from Yoon & Yang LLC to Sec'y Commerce, "Case Brief of the

Government of the Republic of Korea" (Aug. 19, 2025) ("GOK's Case Brief"); Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea, Case No. C-580-837: Hyundai Steel's Case Brief" (Aug. 19, 2025) ("Hyundai Steel's Case Brief"). In its case briefs, Hyundai Steel and the GOK argued that Commerce's determination that the provision of electricity program was *de facto* specific was unlawful. *See* Hyundai Steel's Case Brief at 4-14; GOK's Case Brief at 16-26. Hyundai Steel and the GOK also argued that Commerce's benefit determination was unlawful because it included the fuel-cost pass-through amounts that were incurred in 2021 and 2022 as part of its costs for the 2023 POR. Hyundai Steel Case Br. at 14-16; GOK Case Br. at 13-16. These costs should only have been included in 2021 or 2022 when they were incurred, and thus excluded from the 2023 costs to avoid double counting.

13.    Commerce issued its *Final Results* on February 20, 2026. In the *Final Results,* Commerce continued to determine that the provision of electricity in Korea was *de facto* specific pursuant to section 771(5A)(D)(iii)(III) of the Act. Final Decision Mem. at 19-27. To support its *de facto* specificity determination, Commerce continued to rely on both sets of usage data provided by the GOK for the steel industry and the top ten largest electricity consuming industries that reflected their consumption as a proportion of the total amount of electricity consumed in Korea and within the industrial classification. *Id*. The GOK datasets were proprietary, but Commerce found that both demonstrated that the steel industry and other industries combined, consumed a disproportionately large amount of electricity in Korea. *Id.* Commerce also rejected the GOK's argument that the accumulated fuel costs incurred in 2021 or 2022 should have been excluded from the 2023 cost data that Commerce used for its cost recovery test. *See* Final Decision Mem. at 15-19.

6

14.    This appeal followed.

## STATEMENT OF CLAIMS

15.    This Court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1).

16.    Commerce's *Final Results* are unsupported by substantial evidence and are otherwise not in accordance with law in the following respects:

## Count One

17.    Paragraphs 1 through 16 are incorporated by reference as if fully set forth herein.

18.    Commerce's determination that the provision of electricity for LTAR was *de facto* specific under section 771(5A)(D)(iii)(III) of the Act is unsupported by substantial evidence and is otherwise not in accordance with law.

## Count Two

19.    Paragraphs 1 through 18 are incorporated by reference as if fully set forth herein.

20.    Commerce's determination that the provision of electricity for LTAR provided a benefit under section 771(5)(E) of the Act is unsupported by substantial evidence and is otherwise not in accordance with law.

## PRAYER FOR RELIEF

21.    WHEREFORE, Plaintiff Hyundai Steel respectfully requests that this Court:

   a. Hold Commerce's *Final Results* unsupported by substantial record evidence and otherwise not in accordance with law;

   b. Remand the *Final Results* to Commerce for a redetermination consistent with the judgment and findings of this Court; and

c.  Provide such other relief as this court deems appropriate.

Respectfully submitted,

**TAFT STETTINIUS & HOLLISTER LLP**
1333 New Hampshire Avenue, NW, Suite 800
Washington, D.C. 20036
(202) 216-4116

/s/ Brady W. Mills
Brady W. Mills
R. Will Planert
Mary S. Hodgins
Nicholas C. Duffey

*Counsel to Hyundai Steel Company.*

Dated:  April 16, 2026

8